IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| WILLIAM EPP, | ) | 4:16CV3176 |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM AND ORDER |
| SCOTT FRAKES, *et al.*, | ) | |
| Defendants. | ) | |

On March 7, 2017, the court filed a Memorandum and Order on initial review of a complaint filed jointly by William Epp and Dukhan Mumin (Filing No. 1), both of whom are inmates at the Tecumseh State Correctional Center ("TSCI"). The court found there was a misjoinder of parties plaintiff under Rule 20(a)(1) of the Federal Rules of Civil Procedure and also a misjoinder of claims against multiple defendants under Rule 20(a)(2) of the Federal Rules of Civil Procedure. Consequently, the court severed Epp's claims from Mumin's claims by directing the clerk of the court to open a new case file for Mumin (see Case No. 4:17CV3032) and then gave each plaintiff 30 days to file an amended complaint on their own behalf.

The plaintiffs were cautioned that in preparing their amended complaints they must "decide which claims to exclude from their respective cases in order to comply with Rule 20(a)(2)" (Filing No. 18 at CM/ECF p. 8). The plaintiffs were also advised that an excluded claim could be brought in new action, but that a filing fee would be assessed for each new action filed (*Id.*).

Epp's Amended Complaint in this case was received and filed by the clerk of the court on April 10, 2017 (Filing No. 21). The postmark is not legible, but the pleading appears to have been signed by Epp on April 6, 2017 (*Id.* at CM/ECF pp. 8, 9). If Epp deposited the amended complaint in the prison mail system on that date, it was timely filed. *See United States v. Harrison*, 469 F.3d 1216, 1217 (8th Cir. 2006) ("Under the prison mailbox rule, a pro se pleading is deemed filed upon deposit in the prison mail

system prior to the expiration of the filing deadline."); *Sulik v. Taney County*, 316 F.3d 813, 815 (8th Cir. 2003) ("[T]he prison mailbox rule governs the determination of when a prisoner's civil complaint has been filed."), *overruled on other grounds in later appeal*, 393 F.3d 765 (8th Cir. 2005). The court now conducts an initial review of Epp's Amended Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e)(2) and 1915A.

## I. SUMMARY OF AMENDED COMPLAINT

The original Complaint in this matter contained five claims that were alleged jointly by both Epp and Mumin and two claims that were alleged solely by Epp. Epp's Amended Complaint contains three claims, which are identified as follows:

- "Denial of Religious Freedom" (Filing No. 21 at CM/ECF pp. 2-5, ¶¶ 11-36). This claim, which is brought under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*, generally corresponds to one of the claims that was alleged solely by Epp in the original Complaint (Filing No. 1 at CM/ECF pp. 5-7, ¶¶ 32-56). Epp alleges he has contracted with Glen and NDCS to obtain a special diet as a practicing Buddhist since 2011, but the diet has been suspended on at least four occasions as a disciplinary measure after he missed a meal; Epp also complains he is not permitted to obtain food items from outside sources. Epp alleges Busboom and Frakes have failed to take any corrective action.

- "Plaintiff was prosecuted under Neb. Rev. Stat. 25-1233(1) which is an unconstitutional statute" (Filing No. 21 at CM/ECF pp. 5-7, ¶¶ 37-50). This claim, which the court construes as being brought under 42 U.S.C. § 1983, pertains to a Nebraska statute dealing with the examination of prisoners and generally corresponds to the other claim that was alleged solely by Epp in the original Complaint (Filing No. 1 at CM/ECF pp. 20-22, ¶¶ 168-181). Epp complains the statute did not allow prisoners to be transported from another county to testify at his criminal trial.

- Neb. Rev. Stat. 29-2221 et seq. Is Unconstitutional" (Filing No. 21 at CM/ECF pp. 7-8, ¶¶ 51-56). This claim, which the court construes as being brought under 42 U.S.C. § 1983, pertains to Nebraska's habitual criminal statute and generally corresponds to a claim that was alleged jointly by Epp and Mumin in the original Complaint (Filing No. 1 at CM/ECF pp. 16-17, ¶¶ 139-149). Epp complains he was sentenced as a habitual criminal without any jury determination and by only a preponderance of the evidence.

Six individuals are named as Defendants in the Amended Complaint: (1) Scott Frakes, Director of the Nebraska Department of Correctional Services ("NDCS"); (2) Pete Ricketts, Governor of Nebraska; (3) Scott Busboom, Associate Warden at TSCI; (4) Chuck Glen, a NDSC employee in charge of religious programs; (5) Michael Kenney, former Director of NDCS; and (6) Brian Gage, former Warden at TSCI (Filing No. 21 at CM/ECF pp. 1-2, ¶¶ 5-10). All of these Defendants are sued in their individual and official capacities (Filing No. 21 at CM/ECF p. 1, ¶ 2). The title in the caption to the Amended Complaint also lists NDCS and the State of Nebraska as Defendants (Filing No. 21 at CM/ECF p. 1).

The only named Defendants mentioned in allegations pertaining to the first claim identified above are Frakes, Busboom, and Glen (Filing No. 21 at CM/ECF pp. 2-3, ¶¶ 14, 20).[1] None of the named Defendants are mentioned in allegations pertaining to the second and third claims, although for relief Epp requests that Neb. Rev. Stat. §§ 25-1233(1) and 29-2221 be declared unconstitutional and the State of Nebraska enjoined "from continually applying both statutes to criminal defendants until such time as those provisions are brought into alignment with the U.S. Constitution and Nebraska

---

[1] Epp also references "defendants . . . Hansen, Sabatka-Rine, [and] Rothwell" (Filing No. 21 at CM/ECF p. 3, ¶ 20), but these individuals are not identified as defendants in the "Parties" section of the amended complaint (*id.* at pp. 1-2), nor are they listed in the caption as required by federal pleading practice. *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties . . .."). Thus, the court does not consider them to be parties to the lawsuit.

Constitution" (Filing No. 21 at CM/ECF p. 8). Epp seeks to recover compensatory and punitive damages with respect to the first claim.

## II. LEGAL STANDARDS ON INITIAL REVIEW

The court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

## III. DISCUSSION OF CLAIMS

**A. Misjoinder**

While a plaintiff may join in one action as many claims as he has against a single defendant, *see* Fed. R. Civ. P. 18(a), "in actions where more than one defendant is named, such as the one at bar, the analysis under Rule 20 precedes that under Rule 18." *Houston v. Shoemaker*, No. 2:16-CV-36-CDP, 2017 WL 35699, at *2 (E.D. Mo. Jan. 4, 2017). Rule 20 provides in part: "Persons ... may be joined in one action as defendants if ... any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and ... any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Thus, "[d]espite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all." Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2016). That situation does not exist in this case.

Even if the State of Nebraska and NDCS are treated as named Defendants, they are immune from suit in federal court in an action brought under 42 U.S.C. § 1983. *See Will v. Mich. Dep't of State Police,* 491 U.S. 58, 65-66 (1989) ("[A] State is not a 'person' within the meaning of § 1983 ... The Eleventh Amendment bars ... suits [against States for alleged deprivations of civil liberties] unless the State has waived its immunity."). While under the doctrine set forth in *Ex Parte Young,* 209 U.S. 123 (1908), state officials may be sued in their official capacities for prospective injunctive relief without violating the Eleventh Amendment, the same doctrine does not extend to states or state agencies. *Monroe v. Arkansas State Univ*., 495 F.3d 591, 594 (8th Cir. 2007). Eleventh Amendment immunity also applies to actions brought under RLUIPA. While the Act provides that a person asserting a violation may "obtain appropriate relief against a government," 42 U.S.C. § 2000cc–2(a), the Supreme Court has held this language does not operate to effect

-5-

a waiver of the states' sovereign immunity. *See Sossamon v. Texas, 563 U.S. 277, 285 (2011)*.

"In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Ex parte Young*, 209 U.S. at 157. The NDCS Director (Frakes), Associate Warden at TSCI (Busboom), and the NDCS employee in charge of religious programs (Glen) are alleged to have a connection to Epp's first claim regarding his religious practices and dietary needs, but they have no connection to Epp's second and third claims regarding prisoner testimony and habitual criminal sentencing. No injunctive relief can be obtained against the former NDCS Director (Kenney) or the former TSCI Warden (Gage), nor are they alleged to have taken any action with respect to the first claim which might make them personally liability for damages;[2] they also have no alleged connection to the second and third claims.

The only other named defendant is the Nebraska Governor (Ricketts), but he also has no alleged connection to any of the claims. "General authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law." *Children's Healthcare is a Legal Duty, Inc. v. Deters,* 92 F.3d 1412, 1416 (6th Cir. 1996) (quoting *1st Westco Corp. v. Sch. Dist. of Philadelphia,* 6 F.3d 108, 113 (3rd Cir. 1993)); *see also Okpaboli v. Foster,* 244 F.3d 405, 416 (5th Cir. 2001); *Waste Mgmt. Holdings, Inc. v. Gilmore,* 252 F.3d 316, 331 (4th Cir. 2001). "The mere fact that a governor is under a general duty to enforce state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute." *Shell Oil Co. v. Noel,* 608 F.2d 208, 211 (1st Cir. 1979).

Consequently, Epp's Amended Complaint fails to satisfy the requirements of Rule 20(a)(2) for permissive joinder of defendants. "Misjoinder of parties is not a ground for

---

[2] Also, as will be discussed below, damages are not recoverable under RLUIPA against prison officials who are sued in their individual capacities.

dismissing an action," but the court on its own may "drop a party" or "sever any claim against a party" in order to eliminate the misjoinder. Fed. R. Civ. P. 21. In this instance, the court will sever the claims by dismissing the second and third claims without prejudice to their refiling. In this way, unless Epp chooses to refile the claims on his own, he will not incur additional filing fees and he will not subjected to the "three strikes" provision of the Prison Litigation Reform Act, *see* 28 U.S.C. §1915(g), if the second and third claims are frivolous or fail to state a claim upon which relief can be granted.[3] Because of the nature of these claims, it does not appear that Epp will suffer "gratuitous harm" by their dismissal. *See Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (Rule 21 dismissal was an abuse of discretion where claims would time-barred on refiling).

**B. RLUIPA Claim**

Epp alleges his first claim is brought pursuant to the Religious Land Use and Institutionalized Persons Act, which provides, in part:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in [42 U.S.C. § 1997], even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—

(1) is in furtherance of a compelling governmental interest; and

---

[3] Without deciding this issue, the court notes that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974). If Phillips is claiming that his conviction or sentence is unlawful, the Amended Complaint "would inappropriately be seeking relief from or modification of current, existing custody." *Id.* "[A] § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody." *Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973).

> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). A jail, prison, or other correctional facility which is owned, operated, or managed by, or provides services on behalf of any State or political subdivision of a State, is an "institution." *See* 42 U.S.C. § 1997(1). RLUIPA defines "religious exercise" broadly as including "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).

"It is well-accepted that '[p]rison inmates retain constitutional rights protected by the First Amendment, including the right to free exercise of religion.'" *Native Am. Council of Tribes v. Weber*, 750 F.3d 742, 748-49 (8th Cir. 2014) (quoting *Fegans v. Norris*, 537 F.3d 897, 902 (8th Cir. 2008). "Despite this promise, the prison context is one 'where it is so easy for governmental officials with so much power over inmates' lives to deny capriciously one more liberty to those who have already forfeited so many others.'" *Id.* (quoting *Yellowbear v. Lampert*, 741 F.3d 48, 53 (10th Cir .2014)). Consequently, "Congress granted additional protection for religious exercise by institutionalized persons through the enactment of RLUIPA." *Id.*

Inmates retain a private cause of action to enforce RLUIPA protections. *See* 42 U.S.C. § 2000cc-2(a) (explaining that "[a] person may assert a violation of [RLUIPA] as a claim or defense in a judicial proceeding and obtain appropriate relief against a government"). To succeed on such a claim, an inmate must initially produce "prima facie evidence" that the challenged government practice "substantially burdens [his] exercise of religion." *Native Am. Council of Tribes*, 750 F.3d at 49 (quoting 42 U.S.C. § 2000cc-2(b)). "If the inmate produces such evidence, the burden shifts to the government to prove every other element of the claim (*i.e.* that its practice furthers a compelling government interest and there are no less restrictive means of furthering that interest)." *Id.*

"[T]he existence of a sincerely held tenet or belief that is central or fundamental to an individual's religion is a prerequisite to a 'substantially burdened' claim under RLUIPA." *Murphy v. Mo. Dep't of Corr.*, 506 F.3d 1111, 1115 (8th Cir. 2007). "In order for a government practice to substantially burden a religious exercise, it must significantly

-8-

inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion." *[Patel v. U.S. Bureau of Prisons](), 515 F.3d 807, 813 (8th Cir. 2008)* (internal quotation marks and citation omitted).

Epp alleges, among other things, that "[a]s a Buddhist, he is required to sustain and maintain a strict diet free of animal flesh," that "Chuck Glenn [*sic*] and the NDCS has established a contract program in order for a prisoner of the Buddhist faith to participate and obtain a special diet to accommodate their religious dietary needs," that Epp "signed such a contract in order to be provided a Buddhist religious diet" and "has participated in this program since 2011," that "has been punished for missing a meal, by placing him on suspension, and preventing him from observing his religious duties, for several days and months at a time," that he "has been so deprived on at least four occassions [*sic*], with the most recent being for several months," that "no other prisoner is penalized for missing a meal provided in the kitchen at TSCI" and "[t]he Department has a policy to not use food as a disciplinary measure," that Epp "has addressed this issue to defendants Busboom . . . and Frakes" but "[n]either has taken steps by which to correct the problem," that "when he attempted to obtain . . . food items from an outside vendor, he was prevented from doing so," even though "members of the Jewish faith are allowed to obtain dietary food items from outside sources," and that the defendants' actions in "depriving Epp of his dietary needs has caused him physical, mental, and spiritual injury." (Filing No. [21 at CM/ECF pp. 2]()-3, ¶¶ 13-17, 19-20, 22-25).

**1. Money Damages**

Although the Eighth Circuit has not yet decided the question, other Courts of Appeals have uniformly held that RLUIPA does not permit money damages against state prison officials, even when the lawsuit targets the defendants in their individual

capacities. *See Haight v. Thompson*, 763 F.3d 554, 570 (6th Cir. 2014); *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014); *Washington v. Gonyea,* 731 F.3d 143, 145-46 (2d Cir. 2013); *Stewart v. Beach,* 701 F.3d 1322, 1334-35 (10th Cir. 2012); *Sharp v. Johnson,* 669 F.3d 144, 153 (3d Cir.2012); *Nelson v. Miller,* 570 F.3d 868, 886-89 (7th Cir. 2009); *Rendelman v. Rouse,* 569 F.3d 182, 186-89 (4th Cir. 2009); *Sossamon v. Texas,* 560 F.3d 316, 327-29 (5th Cir. 2009); *Smith v. Allen,* 502 F.3d 1255, 1271-75 (11th Cir. 2007). *See also Deaton v. Arkansas Dep't of Correction*, 599 F. App'x 604 (8th Cir. 2015) (per curiam unpublished) (holding officials entitled to qualified immunity while "assuming for the sake of analysis that RLUIPA authorizes claims for money damages against officials in their individual capacities" and citing *Haight* as contrary authority); *Garrett v. St. Louis Cty. Justice Ctr.*, No. 4:17-CV-232 CEJ, 2017 WL 914264, at *2 n. 4 (E.D. Mo. Mar. 7, 2017) ("RLUIPA does not authorize individual capacity claims against prison officials."); *Mueller v. Mesojedec*, No. 16-CV-277 (JNE/TNL), 2017 WL 764866, at *4 (D. Minn. Jan. 6, 2017) ("Plaintiffs cannot sustain a RLUIPA claim against the Defendants in their individual capacities."), *report and recommendation adopted*, 2017 WL 758929 (D. Minn. Feb. 27, 2017); *Goulding v. Kaemingk*, No. 4:14-CV-04151-KES, 2016 WL 6271425, at *14 (D.S.D. Sept. 23, 2016) ("RLUIPA does not permit suit against state officials in their individual capacities because the Spending Clause authority by which RLUIPA was enacted does not support an action against an official in his or her individual capacity."), *report and recommendation adopted*, 2016 WL 6269587 (D.S.D. Oct. 25, 2016); *McCroskey v. Kelley*, No. 5:15CV00229 BRW/PSH, 2016 WL 3172396, at *3 (E.D. Ark. May 19, 2016) ("If sued in their individual capacity, RLUIPA does not authorize money damages against the defendants."), *report and recommendation adopted*, 2016 WL 3172785 (E.D. Ark. June 6, 2016). The court is persuaded by the reasoning of the aforesaid opinions and therefore will dismiss the first claim to the extent Epp seeks to recover compensatory and punitive damages.

**2. Declaratory and Injunctive Relief**

"A pleading that states a claim for relief must contain ... a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a)(3). Although Epp does not specifically request any declaratory or injunctive

relief with respect to the first claim, he does generally request "[a]ny other relief the Court deems just and fair" (Filing No. 21 at CM/ECF p. 8). Liberally construing the Amended Complaint, and recognizing that Defendants have been sued both in their individual and official capacities, the court concludes that the first claim may be treated as requesting declaratory and injunctive relief under RLUIPA.

Without prejudice to Defendants' ability to file a motion dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court also concludes that the allegations of the first claim of the Amended Complaint are sufficient to state a plausible claim for *prospective* declaratory and injunctive relief against Defendants Frakes, Busboom, and Glen in their official capacities. Specifically, the issues presented for determination are whether Defendants will violate RLUIPA if they suspend Epp's special diet as a penalty for missing a meal and do not allow Epp to obtain food items from outside sources.

### 3. Exhaustion of Administrative Remedies

"[A] prisoner may not sue under RLUIPA without first exhausting all available administrative remedies." *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005) (citing 42 U.S.C. § 2000cc-2(e) (nothing in RLUIPA "shall be construed to amend or repeal the Prison Litigation Reform Act of 1995"); 42 U.S.C. § 1997e(a) (requiring prisoners to exhaust available administrative remedies before bringing an action with respect to prison conditions)). The Supreme Court has ruled, however, that "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007).[4]

## IV. CONCLUSION

Only Epp's first claim regarding alleged RLUIPA violations will be allowed to proceed, and only for the purpose of obtaining prospective relief in the form of a

---

[4] In any event, Epp does allege that "[a]ll claims have been exhausted via the grievance procedure" (Filing No. 21 at CM/ECF p. 1, ¶ 3).

declaratory judgment or injunction as against Defendants Frakes, Busboom, and Glen in their official capacities.

IT IS THEREFORE ORDERED:

1. Any and all claims alleged against the State of Nebraska and the Nebraska Department of Correctional Services are dismissed without prejudice.

2. Any and all claims alleged against Defendants Pete Ricketts, Michael Kenney, and Brian Gage, in their individual and official capacities are dismissed without prejudice.

3. Any and all claims alleged against Defendants Scott Frakes, Scott Busboom, and Chuck Glen in their individual capacities are dismissed without prejudice.

4. Plaintiff's second claim for relief (alleged unconstitutionality of Neb. Rev. Stat. § 25-1233(1)) is dismissed without prejudice.

5. Plaintiff's third claim for relief (alleged unconstitutionality of Neb. Rev. Stat. § 29-2221) is dismissed without prejudice.

6. Plaintiff's first claim for relief (alleged RLUIPA violations) is dismissed without prejudice insofar as Plaintiff seeks to recover damages or obtain any retrospective relief, but such claim may otherwise proceed to service of process as to Defendants Scott Frakes, Scott Busboom, and Chuck Glen in their official capacities only.

7. For service of process on Defendants Frakes, Busboom, and Glen in their official capacities, the clerk of the court is directed to complete a summons form and a USM-285 form for each Defendant using the address "Office of the Nebraska Attorney General, 2115 State Capitol, Lincoln, NE 68509,"

and forward them together with a copy of the Amended Complaint and a copy of this Memorandum and Order to the Marshals Service. **The Marshals Service shall serve Defendants in their official capacities at the office of the Nebraska Attorney General, 2115 State Capitol, Lincoln, NE 68509.** *See* Federal Rule of Civil Procedure 4(j)(2); Neb. Rev. Stat. § 25-510.02 (Reissue 2016).[5]

8. The United States Marshal shall serve all process in this case without prepayment of fees from Plaintiff.

9. The clerk of the court is directed to set the following pro se case management deadline: September 13, 2017: check for completion of service of process.

DATED this 15th day of June, 2017.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge

---

[5] Pro se litigants proceeding in forma pauperis are entitled to rely on service by the United States Marshals Service. *Wright v. First Student, Inc.*, 710 F.3d 782, 783 (8th Cir. 2013). Pursuant to 28 U.S.C. § 1915(d), in an in forma pauperis case, "**[t]he officers of the court shall issue and serve all process, and perform all duties in such cases**." *See Moore v. Jackson*, 123 F.3d 1082, 1085 (8th Cir. 1997) (language in § 1915(d) is compulsory). *See, e.g.*, *Beyer v. Pulaski County Jail*, 589 Fed. App'x 798 (8th Cir. 2014) (unpublished) (vacating district court order of dismissal for failure to prosecute and directing district court to order the Marshal to seek defendant's last-known contact information where plaintiff contended that the Jail would have information for defendant's whereabouts); *Graham v. Satkoski*, 51 F.3d 710, 713 (7th Cir. 1995) (when court instructs Marshal to serve papers for prisoner, prisoner need furnish no more than information necessary to identify defendant; Marshal should be able to ascertain defendant's current address).